On Petition for Rehearing
THORNAL, Justice.
By petition for rehearing the appellee, City of Fort Pierce, suggests that.certain points raised were overlooked, in our original opinion and in other respects clarification of the original, opinion Would be'helpful. . ' . . ' ^
The matters mentioned in the petition were not overlooked. The Court was mere-' ly of the view that our decision in State v. City of North Miami, Fla.1954,- 73 So.2d 899, did not control the principal, question raised by the appeal. In the, case cited it was held that in the issuance of Sevver Revenue Bonds a municipality cpuld- proceed under the provisions of Chapter 184, Florida Statutes, F.S.A., (the 1951 General Sewer Financing Act) rather than under particular provisions of its own charter. We held that , the 1951 General Act was cumulative to the provisions of the municipal charter and could* be followed' as an alternative to the charter provisions. We do not have such alternatives available to the City of Fort Pierce in the matter before us.
In our original opinion we held in substance that because of the specific provisions found in Section 6, Chapter 24528, Laws of Florida, Special Acts of 1947 (the Fort Pierce Charter), the proceeds of a Utilities Service Tax could not be pledged “to support an issue of bonds to raise funds for the construction of sanitary sewers.” The appellee requests clarification of this holding so as to determine whether that portion of the bond resolution obligating the Utilities Service Tax income to paying the expense of “operating and maim *138 taming” the sanitary sewer system once constructed is likewise prohibited by the language of the City charter.
In referring to the Utilities Service Tax the Charter provision applicable reads:
" * * * provided that the said excise tax shall be paid only for the purpose of paying the necessary operating expense of the City and none of the funds raised by said tax shall be used for the payment of the debts of the City”.
It is noted from the bond resolution that the estimated cost of “maintaining, repairing and operating” the sewer system is a maximum of $35,000 per year. The estimated net proceeds of the Utilities Service Tax is a minimum of $11,648 per year. “Operating Expenses” as used in the bond resolution is defined in Section 1.03(H) thereof as follows:
“(H) ‘Operating Expenses’ shall mean the current expenses, paid or accrued of operation, maintenance, and repair of the Sewer System and its facilities and shall include, without limitation, the generality of the foregoing administrative expenses relating solely to said Sewer System, insurance premiums and charges for the accumulation of appropriate reserves not annually recurrent but which are such as may reasonably be .expected to be incurred in accordance with sound' accounting practice. ‘Operating Expenses’ shall not include any allowance for depreciation, except to the extent expressly herein provided.”
This Court recognizes that a prime function of - municipal government is to provide facilities for the safety, health and welfare of the inhabitants of the incorporated community. It can safely be observed that no service is more essential to the protection of the public health and the prevention of disease than adequate and effective disposal of' sewage. Unfortunately per-, haps for Fort Pierce the Legislature placed, a restriction on the pledging of Utilities Service Taxes to support the liquidation of bonds but in so doing it directed that the proceeds of such a- tax be used “only for the purpose of paying the necessary operating expense of the City”.
 Our original opinion did not hold that the proceeds of the Fort Pierce Utilities Service Tax could not be pledged to the extent necessary to carry the annual cost of “operating, repairing and maintaining” the Sanitary Sewer System. Under the bond resolution considered, the Utilities Tax was pledged, along with proposed “sewer service charges” not only to “operating expenses” as defined by the resolution but also to the annual amortization requirements for liquidating the revenue bond debt, and setting up replacement and renewal reserves. We held that this could not be done under the Fort Pierce charter. We had to consider the resolution in its entirety because the proposed bond issue was grounded on it. The annual operating expenses of the sanitary sewer system as defined by Section 1.03(H) of the bond resolution are just as much an “operating expense” within the provisions of Section 6, Chapter 24528, Laws of Florida, 1947, as would be the payment of salaries of police officers or the maintenance of equipment and the payment of salaries for garbage collection. There is no prohibition in the City Charter against pledging the Utilities Service Taxes of Fort Pierce to the extent necessary to “operate and maintain” the sanitary sewer system as the same is defined in the bond resolution. “To the extent necessary” is emphasized for the reason that the entire annual income from the tax cannot be obligated for the life of the bonds to the complete exclusion of other municipal operating expenses. Once the Utilities Tax income to the extent necessary is obligated and credited to the requirements for the operation and maintenance of the sanitary sewer system as defined by the ordinance, it is the obvious intent of the city charter that the balance collected annually, if any, be devoted to other current operating expenses of the municipality, apparently in an effort to avoid the necessity of levying some other tax that would produce an equal amount of operating reve *139 nue. While the charter requires the city officials to devote the proceeds of this tax to “operating expenses”, there is no prohibition against the designation of certain specified “operating expenses” as the preferred recipient of the particular tax to the extent necessary to meet the specific expense so long as it is an “operating expense”.
It is noted that the exercise of the ad valorem taxing power for purposes of this bond issue is specifically prohibited.
Because of the obvious importance of the problem to the people of the municipality involved we have felt justified in clarifying our original opinion on rehearing. Having done so, the petition for rehearing is denied.
DREW, C. J., HOBSON, J., and PATTERSON, Associate Justice, concur.